UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| NORMAN DUCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | 1:20-CV-00047-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| JEFFREY J LYASH, PRESIDENT AND CEO OF TVA; AND VYRONE CRAVANAS, SENIOR MANAGER AT TVA; | ) ) ) ) | |
| Defendants | | |

**MEMORANDUM OPINION AND ORDER**

Defendants Tennessee Valley Authority, Jeffrey J. Lyash and Vyrone Cravanas (collectively TVA) have filed a Motion to Dismiss pursuant to both Fed.R.Civ.P. 12(b)(1) and 12(b)(6) [Doc. 15]. Plaintiff Norman Duckett, (Duckett), *pro se*, has filed a Response [Doc. 19]. The matter is now ripe.

**I.  BACKGROUND**

TVA terminated Duckett from his employment on October 21, 2011. Duckett filed a complaint with the Office of Equal Opportunity Compliance (EOC)[1] alleging that he was discriminated against in violation of Title VII of the Civil Rights Act of 1964. After an administrative hearing, Duckett prevailed before the EOC, which entered an Interim Decision in his favor. TVA reviewed the administrative judge's decision and agreed to fully implement its provisions. Duckett did not object to the terms of the Interim Decision. As a result, TVA paid

---

[1] The Equal Employment Opportunity Commission (EEOC) established the EOC as the administrative agency to investigate claims of discrimination against federal agencies such as the TVA. 29 C.F.R. § 1614.105

1

Duckett a lump sum that included $299,101.31 in back pay and $44,774.79 in "Winning Performance." [Doc. 1-1, pg. 4]. Both payments included interest. Duckett was also given the choice of being reinstated to his prior TVA employment or retiring immediately and receiving two years of front pay. [Doc. 1-1, pg. 8]. He elected to retire so TVA also paid him two years front pay in the amount of $169,626.37 [*Id.*]. He also received payment of annual leave in the amount of $1,256.66. He was granted full retirement benefits, an additional payment of $100,000 in compensatory damages, and his prior performance appraisals were modified. [Doc. 1-1, pg. 5].

Duckett claims that after he was terminated, he remained unemployed and did not file federal income tax returns for the years 2012-14. The lump sum payment was reported as income in the year he received it. According to Duckett, this resulted in his incurring "a substantial tax burden for which the Agency refuses to correct or to reimburse [him] for the adverse tax consequences." [Doc. 1, pg. 2]. He also claims that he has lost social security benefits from receiving the funds in a single year. [Doc. 1-1, pg. 7].

From October 2015 through October 2016, Duckett contacted senior TVA management about his disagreements with TVA's refusal to make him whole. TVA's position was that it had fully complied with the administrative judge's decision finding in Duckett's favor and had paid him accordingly [Doc. 16-5, pg. 1-2]. When the disagreement persisted, the senior manager of EOC advised Duckett on October 31, 2016, that it had made its decision, and if Duckett was not satisfied with it, he would have to appeal the matter within 30 days to the EEOC [*Id.*]. Rather than appealing within 30 days, Duckett filed a "Petition to Enforce Judgment Order" on May 17, 2017 with the EEOC [Doc. 16-6].

TVA challenged Duckett's appeal on the ground that it was not timely. On February 6,

2019, the EEOC agreed and denied his appeal as untimely [Doc. 16-8]. In its denial, it recited Duckett's legal obligations to notify the EEO director if he believed the Agency had failed to comply with the terms of a decision. [Doc. 16-8, pg. 4]; *see also* 29 C.F.R. § 1614.504. It advised Duckett that the time frame to have made that notification was within 30 days of when Duckett knew or should have known of the noncompliance. The EEOC noted that Duckett had received his appeal rights in the Agency's final order dated August 18, 2015. On October 31, 2016, after months of disagreements with the terms of the order, he was reminded again of his appeal rights and the time within which it must be accomplished [Doc. 16-5, pg. 1]. The EEOC found that the May 17, 2017 appeal was simply untimely, and that Duckett offered no adequate justification for any extension [Doc. 16-8]. Duckett then filed this complaint seeking monetary damages as outlined in his complaint [Doc. 1].

## II.     DEFENDANTS' MOTION TO DISMISS [DOC. 15]

Defendants have filed a Motion to Dismiss Duckett's claim pursuant to Fed.R.Civ. P. 12(b)(1) and 12(b)(6). First, they argue, pursuant to Rule 12(b)(1), that this Court lacks subject matter jurisdiction to hear Duckett's case. In this regard, they claim the doctrine of sovereign immunity bars Duckett's claim for damages. They argue that although the Civil Rights Act has waived immunity regarding discrimination "based on race…," it has not done so for suits against a federal agency to enforce an agency's order "implementing a finding of discrimination, especially where there has been no previous appellate decision on the underlying discrimination claim." [Doc. 16, pg. 6]. They claim that "Congress waived immunity only for the underlying Title VII discrimination claim and not for the compliance issues discussed in 29 C.F.R. § 1614.504." [Doc. 16, pg. 7]. They note that Duckett accepted TVA's payment to him and did not appeal the final agency's action. Thus, his claim now is not a discrimination claim but one

3

related to compliance with the agency's decision. Indeed, Duckett's petition was one to "enforce judgment," not a new claim.

Second, Defendants argue, under Rule 12(b)(6), that Duckett did not timely exhaust his administrative remedies prior to filing his suit in federal court. [Doc. 16, pg. 8]. Here they note that § 1614.504(b) required Duckett to file an appeal within 30 days of his receipt of the agency's response. Duckett received that response on July 17, 2016, and again he received the agency's confirmation of their final position on his issue on October 31, 2016. Duckett did not appeal within 30 days, waiting until May 17, 2017, to file his appeal.

In response, Duckett argues the Court should deny Defendants' motion because they "waived the exhaustion defense by not timely raising the issue when [he] filed his motion to enforce with the [Administrative Judge] on December 11, 2015." [Doc. 19, pg. 2]. He does not address Defendants' challenge to this Court's subject matter jurisdiction.

In reply, Defendants note that Duckett is focused on the wrong administrative remedy at issue. That remedy is his May 2017 appeal to the EEOC, not his motion he filed with the administrative judge in December 2015. Accordingly, they argue they did not waive the exhaustion requirement as they raised it before the EEOC, [Doc. 16-8, pg. 3], which ultimately dismissed Duckett's appeal because he failed to timely exhaust his administrative remedies [Doc. 16-8, pg. 4].

### III. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject

4

matter jurisdiction (factual attack). *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). A facial attack "questions merely the sufficiency of the pleading" in alleging subject-matter jurisdiction, so the Court takes the allegations raised in the complaint as true. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In contrast, a factual attack on the complaint requires the Court to examine the existence or non-existence of certain facts, "weigh[ing] the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id*. Although the burden to prove jurisdiction is proper falls on the plaintiff, *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)), the party asserting sovereign immunity has the burden of establishing the applicability of the doctrine. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir.2002).

**B.     Subject-Matter Jurisdiction**

"The United States, as sovereign, is immune from suit save as it consents to be sued...." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). This "consent to be sued," or waiver of sovereign immunity, must be "clear, express, and unambiguous." *Taylor v. Geithner*, 703 F.3d 328, 333 (6th Cir. 2013)(quoting *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993). Congress has, with the passage of Title VII, waived sovereign immunity for discrimination actions brought against federal agencies. *Id.* Thus, if Duckett's case were about whether or not TVA discriminated against him in violation of Title VII of the Civil Rights Act of 1964, then assuming he had exhausted his administrative remedies, sovereign immunity would pose no barrier to the Court addressing the merits of his claim. *See* 42 U.S.C. § 2000e-16(c). Conversely, if Duckett's case is not about discrimination but about

5

compliance issues surrounding the final agency's action, then that is a different issue altogether. *See, Taylor*, 703 F.3d at 333 (finding the government's sovereign immunity had not been waived for federal suits that involve breaches of settlement agreements even where the underlying claim involved discrimination in violation of Title VII). In that instance, sovereign immunity becomes an issue again. This is true even where the underlying claim would not otherwise be precluded by sovereign immunity because settlement agreements and decisions that resolve discrimination claims are different than complaints alleging discrimination in violation of Title VII in the first instance. *Id.* "[N]othing in 42 U.S.C. § 2000e–16(c) indicates that it is intended to waive sovereign immunity for claims other than discrimination." *Taylor*, 703 F.3d at 335.

TVA terminated Duckett back in October 2011. In response, Duckett filed a formal complaint, alleging TVA discriminated against him based on his race and subjected him to a hostile work environment. The EOC accepted Duckett's complaint for investigation. In June 2012, it completed its investigation and advised Duckett of his right to elect either a hearing before an administrative judge with the EEOC or a final agency decision from TVA's Senior Manager with the EOC [Doc. 16-2, pg. 3]. Duckett elected a hearing. That hearing occurred over five days in January and February 2014. In July 2015, the EEOC administrative judge issued an Interim Decision finding Duckett had carried his burden of persuasion on his claims of racial discrimination. The matter then went before TVA's Senior Manager of EOC for "final action" pursuant to 29 C.F.R. § 1614.110(a) on whether the agency would "fully implement the decision of the administrative judge." [Doc. 16-2, pg. 3]. Full implementation meant that the "agency adopts, without modification, the decision of the administrative judge." [*Id.*]. It did just that: "After a careful review of the entire case file, we agree with [the administrative judge's] decision. Accordingly, we fully implement the enclosed Judge's decision finding

6

discrimination." [Doc. 16-2, pg. 4]. The final action advised Duckett that he also had the right to appeal the "final action" of the TVA on his discrimination complaint if he were not satisfied with it [*Id.*]. If he decided he wanted to appeal, he had 30 days after receipt of the decision to file a notice of appeal to the EEOC. Duckett did not appeal, and TVA paid Duckett the amounts outlined in the administrative judge's decision.

After Duckett accepted TVA's payment, he complained that TVA was not compliant with its final decision in that (1) he did not believe TVA paid "enough into [his] social security," (2) the lump sum payment placed him in a higher tax bracket, and (3) TVA had not paid his severance, medical expense reimbursements, performance pay, annual leave, and bonuses. [Doc. 16-5, pg. 3]. The Senior Manager of EOC responded to Duckett's complaint that he could file the SSA-131 that would allow Social Security to reallocate his wages in the proper years. Regarding the higher tax bracket issue, it asked for Duckett's tax return form 1040 for 2015 and "mock tax return form 1040 for the years 2012-15 "showing what [his] taxes would have been if [his] wages were paid out annually instead of in a lump sum" [*Id.* at pg. 2]. On the severance issue, EOC advised Duckett he was not entitled to severance because he took retirement. "TVA retirees are not eligible to receive severance pay…." [*Id.*]. EOC also provided him detailed accounting for how it calculated his annual leave payments and the basis for the other calculations. Notwithstanding that, on October 31, 2016, Duckett again contacted EOC asking for the agency's position concerning the issues he raised. On that same date, EOC advised Duckett that its position "has been communicated to [him] several times, most recently in our Compliance Summary letter to [him] dated July 17, 2016." [Doc. 16-5, pg. 1]. The email reminded him of his appeal rights.

On May 22, 2017, Duckett filed a "Petition to Enforce Judgment" with the EEOC. [Doc.

7

16-6, pg. 1]. He noted in his appeal that he believed the administrative judge's decision entitled him to severance pay, annual leave payment, and front pay bonuses for 2015 through 2017 [Doc. 16-6, pg. 10]. He also complained that the lump sum payment he received in one year increased his tax burden. In his petition, he asked for an "order commanding the Agency to comply with the final order in this cause…." [Doc. 16-6, pg. 12]. The EEOC dismissed his appeal because Duckett had not filed his appeal within 30 days of Agency's final order. This lawsuit then followed.

*Duckett's lawsuit.* Duckett's allegations in his complaint in this Court are not about how TVA unlawfully discriminated against him in violation of Title VII of the Civil Rights Act. Instead, his complaint is about what he perceives as compliance issues regarding TVA's implementation of the administrative judge's decision, which it adopted as its final agency action. To the extent that Duckett believed the decision should have included additional payments for taxes, severance, annual leave, and front pay bonuses, but did not, then he should have appealed the decision within the time provided by law. *See* 29 C.F.R. § 1614.402(a)(providing 30 days to appeal to the EEOC).[2] Because Duckett did not, it is the final agency's action, and it resolved Duckett's claim of discrimination.

Instead, Duckett's complaint is about TVA's compliance with the decision. For that issue, the regulations are quite specific and lay out the procedure to challenge an agency's compliance with a decision or settlement agreement. 29 C.F.R. 1614.504 is titled "Compliance with settlement agreements and final action." Section 1614.504(a) provides that if "complainant

---

[2] If Duckett wanted then to file an action in federal court, he could. "Within ninety days of receiving notice of the final agency action or the EEOC decision, or within 180 days of filing the initial complaint with the agency or the appeal with the EEOC, the employee can file civil suit in a U.S. District Court." *Locket v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008)(citing 29 C.F.R. § 1614.407(a)-(d)).

believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance." When that occurs, the agency must respond to the complainant and attempt to resolve the dispute. Section 1614.504(b). If the complainant is not satisfied "with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or decision." *Id.* But to do that, he "must file an appeal within 30 days of his or her receipt of an agency's determination." *Id.* This appeal is to the EEOC for it to determine whether the agency is complying or not with either the settlement agreement or the decision. Section 1614.504(c) empowers the EEOC to order compliance: "[i]f the Commission determines that the agency is not in compliance with a decision or settlement agreement…, it may order such compliance with the decision or settlement agreement…." Duckett did, in fact, challenge TVA's compliance with the decision, but did not do so within the 30 days required by the regulation. Instead, he waited until May 17, 2017, to file his appeal. And, when the EEOC denied it, he filed this suit.

Can Duckett file a suit to compel compliance with a decision under § 1614.504? The Sixth Circuit in *Taylor* answered that question. In *Taylor*, a party sued for a breach of a settlement agreement – much like Duckett is doing here. The Sixth Circuit, in addressing a compliance issue with a settlement agreement, held that § 1614.504 provides the "exclusive procedures by which a complainant may seek relief…." *Taylor*, 703 F.3d at 335.[3] It specifically

---

[3] The fact that *Taylor* dealt with a settlement agreement and not a final agency action is of no consequence. Section 1614.504 addresses compliance issues pertaining to both. There is no reason why § 1614.504 would be the exclusive remedy for a breach of a settlement agreement and not a breach of a decision. Section 1614.504 is the exclusive remedy because sovereign immunity has not been waived.

9

found that § 1614.504 was the only remedy because it found that sovereign immunity had not been waived to permit the court to have jurisdiction over a dispute about a breach of a settlement agreement. In other words, it found that a suit in federal court against an agency of the United States to enforce a settlement agreement was not permitted because sovereign immunity had not been waived on that issue. *Id.* (finding no "express waiver of sovereign immunity concerning breach-of-settlement-agreement claims under Title VII"). The same logic applies equally to Duckett's claim of an alleged breach of a decision. Sovereign immunity has not been waived for his claim. Duckett was required to follow the steps outlined in § 1614.504 to have his noncompliance issues addressed. That regulation specifically protects Duckett and permits him to raise and litigate claims of noncompliance with a decision. He could have pursued his claims had he timely appealed TVA's decision. But he chose to wait past the 30-day deadline. Accordingly, because sovereign immunity has not been waived for Duckett's claim alleging noncompliance with an agency's decision, this Court lacks subject matter jurisdiction over Duckett's claim.[4]

## IV. CONCLUSION

For the aforementioned reasons, this Court lacks subject matter jurisdiction over Duckett's case given that sovereign immunity has not been waived. 29 C.F.R. § 1614.504 provides the exclusive remedy for Duckett's issues. Accordingly, Defendants' Motion to Dismiss [Doc. 15] pursuant to Fed.R.Civ.P. 12(b)(1) is **GRANTED**. Their Motion to Dismiss

---

[4] This is true as well even though the EEOC's letter advised Duckett of his appellate rights. To the extent that he relies on the statements in the EEOC letter regarding his appellate rights, boilerplate statements in an agency decision cannot waive sovereign immunity and confer jurisdiction to this Court. *See United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660, 67 S.Ct. 601, 91 L.Ed. 577 (1947) ("It has long been settled that officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision by Congress").

pursuant to Fed.R.Civ.P. 12(b)(6) is **DENIED AS MOOT**. The Complaint is **DISMISSED WITHOUT PREJUDICE.** The clerk is directed to close the case. A separate judgment shall enter.

SO ORDERED:

s/Clifton L. Corker
United States District Judge